**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD BERDELL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| VELOCITY INVESTMENTS, L.L.C. and | ) | |
| MANDARICH LAW GROUP, LLP, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

Plaintiff, Ronald Berdell, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and under Illinois state law statutory and common-law counts, and alleges:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. §1331.

2.     Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

### STANDING

3.     Defendants illegally obtained a judgment and garnished Plaintiff's wages after the judgment had been vacated, and accepted and retained garnished money they had no legal right to retain, all in violation of Plaintiff's rights under the FDCPA and Illinois law, which caused Plaintiff economic and emotional harm.

4.     Additionally, Plaintiff suffered a concrete injury and harm to his reputation as a result of Defendants' actions of maintaining a garnishment action against him that

1

was illegal under Illinois law, including loss of money and physical manifestations of stress suffered by Plaintiff caused by Defendants' actions.

5.     Plaintiff has thus suffered an injury as a result of Defendants' conduct, and suffered harm to his reputation, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6.     Plaintiff, Ronald Berdell ("Plaintiff"), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted WebBank consumer credit account.

7.     Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

8.     Defendant, Velocity Investments, L.L.C. ("Velocity"), is a New Jersey limited liability company with its principal place of business at 1800 Route 34 North, Building 4, Suite 404A, Wall, New Jersey, 07719.

9.     Velocity does or transacts business in Illinois.

10.     Velocity holds a collection agency license from the state of Illinois.

11.     Velocity maintains a website, https://velocityrecoveries.com/.

12.     Velocity's website provides in part as follows:

**ABOUT VELOCITY INVESTMENTS, LLC**

Velocity is a comprehensive accounts receivables management (ARM) company focused on working with consumers to find satisfactory resolutions to outstanding debts.

Velocity combines our strong expertise in customer service and consumer focused collection solutions with our technologically advanced and compliance based management system across our network of account resolution specialists located in all fifty states.

Maintaining high standards means conducting our business ethically and legally. Our adherence to these standards is a key component in building a reputation for excellence and integrity, and ensuring that Velocity's employees and representatives treat each consumer with fairness, dignity and respect.

Velocity Investments, LLC, "ABOUT VELOCITY INVESTMENTS, LLC", https://velocityrecoveries.com/, Accessed on 21 May 2021.

13.     Velocity's principal business purpose is the collection of defaulted consumer debts via the use of interstate commerce and mails, and Velocity is a "debt collector" as defined within 15 U.S.C. § 1692a(6) of the FDCPA.

14.     Velocity regularly collects or attempts to collect defaulted consumer debts on behalf of others via the mails, via telephone calls to consumers, and via litigation, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

15.     Defendant, Mandarich Law Group, LLP ("Mandarich") is a California limited liabilty partnership. It does or transacts business in Illinois, with its principal place of business at 420 North Wabash Avenue, Suite 400, Chicago, Illinois, 60611.

16.     Mandarich does or transacts business in Illinois.

3

17.     Mandarich maintains a website, http://mandarichlaw.com/.

18.     Mandarich's website provides in part as follows:

What is Mandarich Law?

We are a law firm hired by creditors to attempt to resolve your consumer or commercial debt. We want to work with you to create a payment solution that is appropriate for your unique financial situation. If you have received a letter or phone call from our office, we invite you to contact us today so we can try to help you resolve your account.

Mandarich Law Group, LLP, FAQ, "What is Mandarich Law?", http://mandarichlaw.com/who-we-are/faq/, Accessed on 21 May 2021.

19.     Mandarich operates a delinquent debt collection business, and attempts to collect defaulted debts from consumers in the State of Illinois and other states, on behalf of others.

20.     Mandarich regularly collects or attempts to collect defaulted consumer debts on behalf of others via the mails, via telephone calls to consumers, and via litigation, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

21.     In the year 2020, Mandarich filed more than 200 lawsuits in Illinois on behalf of Velocity that contained a "Credit Card or Debt Buyer Collection Action Affidavit" filed pursuant to Illinois Supreme Court Rule 280.2.

22.     Thus far in 2021, Mandarich has filed more than 100 lawsuits in Illinois on behalf of Velocity that contain a "Credit Card or Debt Buyer Collection Action Affidavit" filed pursuant to Illinois Supreme Court Rule 280.2

## FACTUAL ALLEGATIONS

23.     According to Defendants, Plaintiff incurred an alleged debt for the purchase of goods and services, originally via the execution of for a WebBank "Borrower Promissory Note" ("alleged debt").

4

24.     The alleged debt arose from funds used for personal, family and household purposes and is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

25.     Due to his financial circumstances, Plaintiff could not pay the alleged debt, and the alleged debt went into default.

26.     Velocity alleges to have purchased the alleged debt after default.

27.     Velocity thereafter hired Mandarich to collect the alleged debt.

28.     On July 29, 2019, Mandarich, on behalf of Velocity, filed a lawsuit ("State Court Complaint") against Plaintiff in the Circuit Court of Cook County, Illinois ("State Court"), styled *Velocity Investments, LLC v. Ronald Berdell*, Case No. 19-M1-122855 ("State Action"). (Exhibit A, State Court Complaint); *see* Cook County Case Information Summary, available at

https://courtlink.lexisnexis.com/cookcounty/FindDock.aspx?NCase=2019-M1-122253&SearchType=0&Database=1&case_no=&PLtype=1&sname=&CDate= (last visited January 8, 2020).

29.     Velocity, via Mandarich, caused the State Court Complaint, along with a summons ("Summons") to be served on Plaintiff at his home on or about August 27, 2019.

30.     Velocity makes the following claim in the State Court Complaint:

    Amount Claimed: $13,412.89
    plus Costs

    (Exhibit A, State Court Complaint)

31.     A "Credit Card or Debt Buyer Collection Action Affidavit" ("Affidavit") is attached to the State Court Complaint.

5

32. The Affidavit attached to the State Court Complaint references the alleged debt as a "Consumer Debt or Account."

33. The Affidavit references the "Nature of the Debt" as a "Consumer Loan". (Exhibit A, State Court Complaint, See Affidavit, ¶ 1).

34. Plaintiff read and reviewed the State Court Complaint.

35. The Summons had a return date of August 29, 2019.

36. Under Illinois Supreme Court Rule 102(b), summons requiring appearance on a specified date "may not be served later than three days before the day for appearance." Ill. S. Ct. R. 102(b); see, also, 101(b).

37. As the Summons and State Court Complaint was served on August 27, 2019, less than three days before the August 29, 2019 appearance date, the service was invalid as a matter of law.

38. Despite this fact, Mandarich, on behalf of Velocity, sought and obtained a judgment against Plaintiff on October 3, 2019 for $13,412.89 plus costs, by misrepresenting that it had a legal right to do so and that service *was* valid. (Exhibit B, State Court Judgment).

39. Mandarich thereafter mailed a copy of the judgment to Plaintiff.

40. Mandarich mailed a copy of the judgment to Plaintiff to induce him to believe that it was validly obtained, and that the amount reduced to judgment was no longer contestable.

41. Plaintiff believed that the judgment was validly obtained as a result of Defendants' communications, and that it was enforceable.

42.     Thereafter, on January 10, 2020, Mandarich, on behalf of Velocity, filed a "Wage Deduction Summons" and other paperwork in an attempt to collect the judgment. (Exhibit C, Wage Deduction Summons and Affidavit for Wage Deductions Summons executed by employer).

43.     Mandarich also mailed the Wage Deduction Summons and Affidavit for Wage Deductions Summons ("Garnishment Paperwork") to Plaintiff.

44.     Plaintiff received a copy of the Garnishment Paperwork.

45.     Plaintiff read the Garnishment Paperwork and believed that Defendants had a right to garnish his wages.

46.     The Garnishment Paperwork was filed and served in connection with the collection of the judgment obtained on October 3, 2019.

47.     The judgment obtained on October 3, 2019 was void, however, as the Court did not have jurisdiction to enter it.

48.     On February 18, 2020, a further judgment was sought by Defendants and was entered for installment payments to be paid via Plaintiff's employer, from Plaintiff's wages.

49.     Twice a month thereafter, Plaintiff's wages were garnished by Defendants.

50.     Plaintiff hired an attorney in response to having his wages garnished and judgment entered.

51.     Plaintiff paid money to his attorneys in connection with resolving the garnishment and state court judgment.

52. Despite being aware that the judgment was entered under false pretenses, Mandarich continued to regularly garnish Plaintiff's wages on and after February 18, 2020.

53. Plaintiff's counsel filed a motion to quash service and vacate judgment ("Motion") in the State Court.

54. On November 4, 2020, Plaintiff's Motion was granted in the presence of counsel for both Plaintiff and Velocity, and the judgment against Plaintiff was vacated. (Exhibit D, Order/Motion Call).

55. Defendants received a copy of the order vacating judgment.

56. Defendants were thus again informed that they were improperly garnishing Plaintiff's wages as they were aware of the November 4, 2020 hearing and Motion, as counsel for the parties had even communicated regarding the same before the entry of the November 4, 2020 order vacating service and the judgment at issue. (Exhibit E, Emails Sent to Defendants).

57. However, even after the judgment was vacated, Defendant Velocity, through Mandarich, continued to garnish money from Plaintiff's paycheck.

58. Defendants continued to garnish Plaintiff's wages after November 4, 2020, rather than properly ceasing garnishment.

59. Mandarich has thus been aware that judgment was wrongfully entered and that his wages were being wrongfully garnished since February, 2020, as Plaintiff informed Mandarich in February, 2020 that the judgment that was entered had been improper due to improper service. (Exhibit F, Order).

60.     Mandarich did not inform Plaintiff's employer until June, 2021 that the judgment allowing the garnishment had been vacated.

61.     Plaintiff, through his counsel, repeatedly requested of Mandarich to cease garnishment, which Mandarich refused to do.

62.     Mandarich did not provide a copy of the order dated November 4, 2020, to Plaintiff' employer until June of 2021. (Exhibit D, Order/Motion Call).

63.     A judgment is required for wage garnishment to legally occur.

64.     Defendants did not have a legal right to garnish Plaintiff's wages.

65.     Plaintiff thereafter became aware, however, that Defendants continued to garnish his wages based on a void judgment even after the judgment was vacated.

66.     Defendants continued to garnish Plaintiff's wages as if a judgment were still in effect, though it was not.

67.     Defendants continued to garnish Plaintiff's wages without a legal or factual basis to do so.

68.     To date, Defendants wrongfully garnished thousands of dollars of Plaintiff's money which they had no legal right to garnish.

69.     Defendants did not have a right to garnish any of Plaintiff's wages as the judgment upon which garnishment was effected was void.

70.     Defendants wrongfully accepted Plaintiff's money, obtained through the unlawful garnishment, and kept the same though they knew they had no right to do so.

71.     Defendants have charged Plaintiff statutory interest to which Velocity is not entitled, and well as other charges/costs in connection with the wage garnishment that Plaintiff does not owe.

72.     Plaintiff's counsel repeatedly informed Defendants that Plaintiff's wages were being wrongfully garnished, but garnishment continued to June of 2021.

73.     To the date of filing of this action, Defendants continue to withhold thousands of dollars from Plaintiff that they have wrongfully garnished.

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-ALL DEFENDANTS

74.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if plead fully herein.

75.     15 U.S.C. §1692d of the FDCPA provides as follows:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.**

76.     In continuing to garnish Plaintiff's wages, and by accepting, keeping and failing to return the funds that Defendants had garnished, despite being aware that no judgment was in existence that could support continued garnishment and/or keeping money that was not legal for Defendants to keep, Defendants engaged in conduct the natural consequence was to oppress Plaintiff as he could not afford to pay many of his bills as a result of their actions, in violation of 15 U.S.C. § 1692d.

77.     Defendants violated 15 U.S.C. § 1692d by failing to inform Plaintiff's employer to stop garnishing Plaintiff's wages as no valid judgment existed at the time of garnishment.

78.     15 U.S.C. §1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section**

**. . . (2) The false representation of**
**(A) the character, amount, or legal status of any debt**
**(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken…**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer…**

79.     Defendants used false, deceptive, and/or misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e when they misrepresented that proper service had been obtained as to Plaintiff and that they had a right to obtain a judgment and effect wage garnishment against him.

80.     Defendants misrepresented the legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2)(A) when they sought judgment in the State Court without having a legal basis to do so.

81.     In garnishing Plaintiff's paycheck without a legal basis to do so, Defendants misrepresented the legal status and amount of Plaintiff's debt, specifically that a judgment was in existence, and that post-judgment interest and wage garnishment costs, and costs of suit were due and owing, in violation of 15 U.S.C. §§ 1692e and 1692e(2)(A).

82.     In continuing to garnish from Plaintiff's paycheck based on a void judgment and after said judgement had been vacated, Defendants falsely represented that Plaintiff owes money to Velocity that can be recovered via garnishment, specifically that a judgment was entered and pending and that post-judgment interest and costs of suit are due and owing, in violation of 15 U.S.C. § 1692e(10) of the FDCPA.

83.     In accepting, keeping and failing to return the funds that Defendants had garnished, Defendants used deceptive means to collect the alleged debt, in violation of 15 U.S.C. § § 1692e and 1692e(10) of the FDCPA.

84.     Defendants violated 15 U.S.C. §1692e by failing and refusing to inform Plaintiff's employer that a judgment which allowed his paycheck to be garnished had been vacated, by accepting and keeping garnished money, and by failing to request that garnishment of Plaintiff's wages cease.

85.     15 U.S.C. § 1692f of the FDCPA provides as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . .**

86.     Defendants used unfair means to collect the debt in violation of 15 U.S.C. § 1692f when they obtained a judgment without having a legal basis to do so, as no jurisdiction over Plaintiff existed at the time judgment was sought by Defendants.

87.     Defendants used unfair means to collect the debt in violation of 15 U.S.C. § 1692f when they garnished Plaintiff's wages without a legal basis to do so.

88.     Defendants used unfair means to collect the debt in violation of 15 U.S.C. § 1692f when they misrepresented that they had a judgment against Plaintiff, and garnished Plaintiff's wages without a legal basis to do so.

89.     Defendants attempted to collect an amount not authorized by the agreement creating the debt or permitted by law when they attempted to collect money from Plaintiff,

12

including court costs, statutory interest and filing and summons' costs for effecting a wage garnishment, when they did not have a legal basis to do so, in violation of 15 U.S.C. § 1692f(1).

90.     In accepting, keeping and failing to return funds that Defendants had garnished, Defendants used unconscionable and unfair means to collect the alleged debt, in violation of 15 U.S.C. § 1692f.

91.      In failing to inform Plaintiff's employer that a garnishment order had been vacated, Defendants used unfair and unconscionable means to collect the alleged debt, in violation of 15 U.S.C. § 1692f.

92.     Defendants further violated 15 U.S.C. §1692f by accepting and using Plaintiff's money when no legal basis existed to do so.

93.     Defendants' actions caused Plaintiff concrete harm and injury, including *inter alia* severe emotional distress, loss of sleep and financial loss.

94.     Among other effects, Plaintiff was unable to pay bills that otherwise would have been paid if Plaintiff would have had access to the funds that were being wrongfully garnished.

95.     Plaintiff was fooled into believing that Defendants had the right to obtain a judgment, to garnish his wages, and then to continue to garnish his wages after November 4, 2020, and experienced severe embarrassment, shock, humiliation, and loss of sleep as a result of Defendants' actions and his fear that he would lose his home due to his inability to make mortgage payments that he would have been able to make but for Defendants' wrongful garnishment of his wages.

96.     Plaintiff suffered financial harm due to Defendants' actions, as he was forced to hire and pay an attorney due to defend against and address Defendants' illegal practices, and as a result of Defendants' actions that resulted in thousands of dollars of Plaintiff's money being garnished, that Defendants did not have a legal right to garnish, and which Plaintiff was without use of due to Defendants' unfair, unconscionable, deceptive, misleading and fraudulent actions.

97.     Plaintiff missed multiple mortgage payments due to Defendants' actions, as he was without use of the garnished money that he would have used to pay his mortgage, and feared he would lose his home as a result.

98.     Plaintiff missed payments on several of his bills that he would not have missed had Defendants not wrongfully garnished his paycheck.

99.     Plaintiff suffered strife in his marriage due to Defendants' actions as he suffered financial problems that were caused by not having access and use of the money that was garnished.

100.    Plaintiff's credit score decreased due to Defendants' actions, denying him the ability to obtain credit as a result.

101.    Velocity bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Mandarich. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. 2016).

102.    Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

103.    All of the actions taken by Defendants in connection with the violations complained of above would have fooled, misled, and/or deceived an unsophisticated consumer in Plaintiff's shoes, as they did Plaintiff.

WHEREFORE, Plaintiff, Ronald Berdell asks that the Court enter judgment in his favor and against Defendants as follows:

A.    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

B.    Statutory damages pursuant to pursuant to 15 U.S.C. § 1692k(a)(2);

C.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

D.    Such other or further relief as the Court deems proper.

## COUNT II-COMMON LAW WRONGFUL GARNISHMENT-ALL DEFENDANTS

104.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if plead fully herein.

105.    At all times relevant, 735 ILCS 5/12-808 was in full force and effect in the State of Illinois.

106.    Section 735 ILCS 5/12-808(b) provides in pertinent part as follows:

**To the extent of the amount due upon the judgment and costs, the employer shall hold, subject to order of court, any non-exempt wages due or which subsequently come due.**

107.    Section 735 ILCS 5/12-808(e) provides in pertinent part as follows:

**Pursuant to answer under oath to the interrogatories by the employer, an order shall be entered compelling the employer to deduct wages. . .**

**The order shall further provide that the deducted wages shall be remitted to the creditor or creditor's attorney.**

108.    Section 735 ILCS 5/12-817 provides in pertinent part as follows:

> **Wrongful issuance of summons. If any person wrongfully causes summons to issue for a deduction order, he or she may be liable to the employee and the employer for all damages occasioned by such action including reasonable attorney's fees, which damages or attorney's fees may be proved in the same action in which the summons was wrongfully issued.**

109. Defendants did not have a court order under Section 735 ILCS 5/12-808 authorizing them to take Plaintiff's wages from Plaintiff's employer and deposit them in either of their accounts, or that would allow Mandarich to remit said wages to Velocity.

110. Defendants caused Plaintiff damages by depriving him of wages and causing him embarrassment, loss of sleep, and humiliation due to an improper wage garnishment.

111. Plaintiff was fooled into believing that Defendants had the right to obtain a judgment, to garnish his wages, and then to continue to garnish his wages after November 4, 2020, and experienced severe embarrassment, shock, humiliation, and loss of sleep as a result of Defendants' actions and his fear that he would lose his home due to his inability to make mortgage payments that he would have been able to make but for Defendants' wrongful garnishment of his wages.

112. Plaintiff suffered financial harm due to Defendants' actions, as he was forced to hire and pay an attorney due to defend against and address Defendants' illegal practices, and as a result of Defendants' actions that resulted in thousands of dollars of Plaintiff's money being garnished, that Defendants did not have a legal right to garnish, and which Plaintiff was without use of due to Defendants' unfair, unconscionable, deceptive, misleading and fraudulent actions.

113. Plaintiff missed multiple mortgage payments due to Defendants' actions, as he was without use of the garnished money that he would have used to pay his mortgage, and feared he would lose his home as a result.

114. Plaintiff missed payments on several of his bills that he would not have missed had Defendants not wrongfully garnished his paycheck.

115. Plaintiff suffered strife in his marriage due to Defendants' actions as he suffered financial problems that were caused by not having access to and use of the money that was garnished.

116. Plaintiff's credit score decreased due to Defendants' actions, denying him the ability to obtain credit as a result.

WHEREFORE, Plaintiff, Ronald Berdell asks that the Court enter judgment in his favor and against Defendants as follows:

A. Actual damages;

B. Punitive damages in an amount sufficient to deter Defendants from engaging in the practice described in this Count;

C. Attorney's fees, litigation expenses and costs incurred in bringing this action under common law and under 735 ILCS 5/12-817;

D. Such other or further relief as the Court deems proper.

## COUNT III—COMMON LAW CONVERSION-ALL DEFENDANTS

117. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if plead fully herein.

118. Plaintiff had his wages garnished by Defendants without a court order to turn over the funds.

119.    Defendants accepted, held and failed to return Plaintiff's wages having knowledge that no court order was in place and that the money belonged to Plaintiff and not any judgment creditor.

120.    The transfer, acceptance, control and taking of the money constituted conversion of the Plaintiff's money in that it was unauthorized by a court order, and Plaintiff had an absolute and unconditional right to the money until a court order was entered adjudicating the rights of the parties.

121.    The taking of Plaintiff's money was in violation of Illinois law.

122.    The taking of Plaintiff's money was made without Plaintiff's consent.

123.    Plaintiff's counsel requested of Defendants that said garnishment cease, though Defendants continued to garnish Plaintiff's wages thereafter despite being aware of the absence of a court order that could allow such garnishment.

124.    Defendants' actions of taking, accepting and controlling Plaintiff's money absent a court order or due process damages Plaintiff as he was forced to suffer a wage deduction which caused him financial loss, loss of use of the money that was garnished, extreme emotional distress, embarrassment, humiliation and loss of sleep.

125.    Plaintiff was further damages in that he had to bear the costs associated with recovering the money turned over to creditors improperly.

126.    Defendants' actions constituted malice and an intentional disregard of Plaintiff's rights, since Defendants continued to accept and keep Plaintiff's wages despite knowing that they had no right to the same.

127.    Plaintiff was fooled into believing that Defendants had the right to obtain a judgment, to garnish his wages, and then to continue to garnish his wages after

November 4, 2020, and experienced severe embarrassment, shock, humiliation, and loss of sleep as a result of Defendants' actions and his fear that he would lose his home due to his inability to make mortgage payments that he would have been able to make but for Defendants' wrongful garnishment of his wages.

128.    Plaintiff suffered financial harm due to Defendants' actions, as he was forced to hire and pay an attorney due to defend against and address Defendants' illegal practices, and as a result of Defendants' actions that resulted in thousands of dollars of Plaintiff's money being garnished, that Defendants did not have a legal right to garnish, and which Plaintiff was without use of due to Defendants' unfair, unconscionable, deceptive, misleading and fraudulent actions.

129.    Plaintiff missed multiple mortgage payments due to Defendants' actions, as he was without use of the garnished money that he would have used to pay his mortgage, and feared he would lose his home as a result.

130.    Plaintiff missed payments on several of his bills that he would not have missed had Defendants not wrongfully garnished his paycheck.

131.    Plaintiff suffered strife in his marriage due to Defendants' actions as he suffered financial problems that were caused by not having access to and use of the money that was garnished.

132.    Plaintiff's credit score decreased due to Defendants' actions, denying him the ability to obtain credit as a result.

WHEREFORE, Plaintiff, Ronald Berdell asks that the Court enter judgment in his favor and against Defendants as follows:

A.    Actual damages;

B.     Punitive damages in an amount sufficient to deter Defendants from

engaging in the practice described in this Count;

C.     Such other or further relief as the Court deems proper.

## COUNT IV—ILLINOIS COLLECTION AGENCY ACT ("ICAA")— VELOCITY

133.   Plaintiff realleges and incorporates by reference the foregoing paragraphs

as if plead fully herein.

134.   Velocity is a "collection agency" as defined in the Illinois Collection

Agency Act, 225 ILCS 425/2 *et seq*.

135.    Velocity is a "debt buyer" as defined in the Illinois Collection Agency

Act, 225 ILCS 425/2 *et seq*.

136.    Velocity holds an Illinois Collection Agency License.

137.    Velocity violated the following provisions of the Illinois Collection

**Agency Act, 225 ILCS 425/9(a) *et seq*. in taking the actions asserted above:**

**(5) Aiding or assisting another person in violating any provision of this Act or rules adopted under this Act.**
**. . .**
**(23) Engaging in any conduct that is intended to cause and did cause mental or physical illness to the debtor or his or her family.**
**. . .**
**(24) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.**
**(30) Misrepresenting the amount of the debt alleged to be owed.**
**. . .**
**(31) Representing that an existing debt may be increased by the addition of attorney's fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt.**
**. . .**
**(33) Collecting or attempting to collect any interest or other charge or fee in excess of the actual debt unless such interest or other charge or fee is expressly authorized by the agreement creating the debt unless expressly authorized by law or unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement. If a contingency or hourly fee arrangement (i) is established under an agreement**

**between a collection agency and a creditor to collect a debt and (ii) is paid by a debtor pursuant to a contract between the debtor and the creditor, then that fee arrangement does not violate this Section unless the fee is unreasonable. The Department shall determine what constitutes a reasonable collection fee.**

**. . .**

**(35) Engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public.**

138.    A private right of action exists for violation of the ICAA against Defendant. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

139.    Plaintiff suffered actual damages, including financial damages as well as extreme emotional distress, as a result of Defendant's actions, including loss of time and money by having to hire an attorney to vacate and quash a wage garnishment in the State Action, and loss of the use of the wrongfully garnished wages.

140.    Plaintiff also suffered, *inter alia*, severe emotional distress, including loss of sleep, embarrassment, and humiliation.

141.    Plaintiff was fooled into believing that Defendants had the right to obtain a judgment, to garnish his wages, and then to continue to garnish his wages after November 4, 2020, and experienced severe embarrassment, shock, humiliation, and loss of sleep as a result of Defendants' actions and his fear that he would lose his home due to his inability to make mortgage payments that he would have been able to make but for Defendants' wrongful garnishment of his wages.

142.    Plaintiff suffered financial harm due to Defendants' actions, as he was forced to hire and pay an attorney due to defend against and address Defendants' illegal practices, and as a result of Defendants' actions that resulted in thousands of dollars of Plaintiff's money being garnished, that Defendants did not have a legal right to garnish,

and which Plaintiff was without use of due to Defendants' unfair, unconscionable, deceptive, misleading and fraudulent actions.

143.    Plaintiff missed multiple mortgage payments due to nearly went into foreclosure due to Defendants' actions, as he was without use of the garnished money that he would have used to pay his mortgage.

144.    Plaintiff missed payments on several of his bills that he would not have missed had Defendants not wrongfully garnished his paycheck.

145.    Plaintiff suffered strife in his marriage due to Defendants' actions as he suffered financial problems that were caused by not having access to and use of the money that was garnished.

146.    Plaintiff's credit score decreased due to Defendants' actions, denying him the ability to obtain credit as a result.

147    Plaintiff missed multiple mortgage payments due to Defendants' actions, as he was without use of the garnished money that he would have used to pay his mortgage, and feared he would lose his home as a result.

WHEREFORE, Plaintiff, Ronald Berdell asks that the Court enter judgment in his favor and against Velocity as follows:

A.    Actual damages;

B.    Punitive damages in an amount sufficient to deter Defendants from engaging in the practice described in this Count;

C.    Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.


The Law Office of M. Kris Kasalo, Ltd.          By: /s/ Mario Kris Kasalo
4950 Madison St.
PO Box 1425
Skokie, IL 60077
tele 312-726-6160
mario.kasalo@kasalolaw.com


## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such

amount as a court awards. All rights relating to attorney's fees have been assigned to

counsel.


By: s/ *Mario Kris Kasalo*
Mario Kris Kasalo